CARLTON/ J.,
dissenting.
¶30. I respectfully dissent from the majority’s opinion. Mississippi statutory law and caselaw establishes that a minor child’s parents, whose parental rights havé not been terminated, constitute necessary parties to a proceeding for grandparent visitation. See Bolivar v. Wattman, 85 So.3d 335, 337 (¶¶ 7-9) (Miss.Ct.App.2012); Miss.Code. Ann. § 93-15-107 (Rev.2004); Miss.Code Ann. § 93-16-5 (Rev.2004). During the chancery court hearing on Ruby’s petition for grandparent visitation, testimony revealed that the child’s biological father is unknown. Furthermore, the record is ambiguous as to the identity of the child’s legal father.
¶ 31. I find the record fails to reflect that all the necessary parties were served notice and joined in this action. Without proper joinder of, and notice by service of process to, all the necessary parties to this action, including the child’s father, the chancellor lacked jurisdiction to award grandparent visitation. See Bolivar, 85 So.3d at 337 (¶¶ 7-9).[3] As a result, I would vacate the chancellor’s judgment and remand this case to chancery court for further proceedings. On remand, all necessary parties should be joined in this proceeding before the chancellor applies the grandparent-visitation statute[4] and the Martin[5] factors to determine whether to award grandparent-visitation rights.
¶ 32. The record reflects that Dalphanie gave birth to her daughter in 2010. At the time, Dalphanie was engaged to Fredrick Thornton, whom the child’s birth certificate identifies as 'her father. Ruby testified, though, that a subsequent paternity test revealed Fredrick was not the child’s biological father. Following the results of the paternity test, Fredrick and Dalphanie ended their engagement. Further testimony in the record implied that a chancery court subsequently entered a judgment against Patrick and that the judgment allegedly ordered Patrick to pay child support for Dalphanie’s daughter. However, because the judgment was not made part of the record, this Court should not speculate as to its contents.
¶ 33. Interestingly, during the hearing on Ruby’s petition for grandparent visitation, the chancellor questioned the parties as to .the identity of the child’s biological father. Patrick and Dalphanie’s attorney informed the chancellor that no paternity test had been conducted to determine whether Patrick was, in fact, the child’s biological father. The couple’s attorney also informed the chancellor of the apparent -child-support order against Patrick. However, the attorney stated that she brought no copy of the order with her to chancery court to admit into evidence.
¶ 34. The chancellor asked Patrick and Dalphahie’s attorney to try to obtain a copy of the child:support order for him to review to determine whether there had *1193 been an adjudication regarding Patrick’s paternity or whether Patrick was paying support for some other reason. When the hearing resumed, the chancellor reviewed “the court file from [DHS] as it relate[d] to [Patrick].” As previously acknowledged, however, the record on appeal fails to contain documentation of either a child-support order or the contents of the DHS file. Furthermore, even though the chancellor reviewed these documents during the hearing, he failed to make any on-the-record findings regarding the contents of the DHS file.
¶ 35. After the chancellor reviewed the contents of the DHS file, the parties stated, on the record, that they were not challenging the child-support order. Although Ruby testified during the hearing that she did not know whether Patrick was actually the child’s father, her attorney also agreed that Ruby was not in chancery court to challenge Patrick’s paternity. In addition, Patrick and Dalphanie both testified that Patrick was the child’s biological father. The couple made this assertion even though the parties claimed no paternity test had been performed, the parties failed to admit any evidence to support the assertion, and the child’s birth certificate failed to identify Patrick as the father.[6]
¶ 36. Although neither party raised the issue of jurisdiction due to a failure to join all necessary parties, “jurisdiction is a question of law, which [the appellate court] reviews de novo.” Issaquena Warren Counties Land Co. v. Warren Cnty., 996 So.2d 747, 749 (¶ 5) (Miss.2008) (citations omitted). “[A]ll courts must be constantly aware of questions of their jurisdiction to proceed and must be prepared to decide a question pertaining to jurisdiction at any time, even if the court must raise the issue on its own motion.” Dunaway v. Dunaway, 749 So.2d 1112, 1120 (¶ 25) (Miss.Ct.App.1999) (citation omitted).
¶ 37. In establishing the parties who must be joined in a proceeding for grandparent-visitation rights, section 93-16-5 states:
All persons required to he made parties in child custody proceedings or proceedings for the termination of parental rights shall be made parties to any proceeding in which a grandparent of a minor child or children seeks to obtain visitation rights with such minor child or children; and the court may, in its discretion, if it finds that such visitation rights would be in the best interest of the child, grant to a grandparent reasonable visitation rights with the child. Whenever visitation rights are granted to a grandparent, the court may issue such orders as shall be necessary to enforce such rights and may modify or terminate such visitation rights for cause at any time.
(Emphasis added).
¶ 38. As our precedent establishes, in addition to a minor child’s mother, the child’s legal father and putative father constitute necessary parties to a custody proceeding. Bolivar, 85 So.3d at 337. (¶ 7). “[S]ection 93-16-5’s mandate [is] clear and unambiguous that the natural parents whose parental rights have not been terminated must be parties to a grandparent-visitation proceeding.” Id. at (¶ 8). Furthermore, “the requirement for the joinder of necessary parties in section 93-16-5 is jurisdictional.” Id. (citations omitted). “As the supreme court [has] similarly found ..., we find that to give validity and *1194 credence to the [chancellor’s] judgment without joinder of necessary parties would undermine the legislative mandate in section 93-16-5.” Id. (citation omitted).
¶ 39. Pursuant to Mississippi statutory law regarding the determination of a petition for grandparent visitation,[7] the record reflects that jurisdiction over the instant proceeding failed to vest in the chancery court. The chancellor lacked jurisdiction to award grandparent visitation without joinder of and service of process to the child’s legal father and putative father, who constitute necessary parties to the proceeding. See Bolivar, 85 So.3d at 337 (¶¶ 7—8). I would therefore vacate the chancellor’s judgment and remand the case for further proceedings consistent with this opinion.
¶ 40. In writing to remand this case, I acknowledge that the right to grandparent visitation is purely statutory and may only be awarded where the proper criteria, have been met. See Lott v. Alexander, 134 So.3d 369, 371 (¶ 6) (Miss.Ct.App.2014); Aydelott v. Quartaro, 124 So.3d 97, 100 (¶ 9) (Miss.Ct.App.2013). Even if the proper and necessary parties are joined to this action and are notified by service of process, then “[sufficient findings are [still] required under the applicable statutory framework and factors” to support an award of grandparent visitation. Bolivar, 85 So.3d at 338 (¶ 10). Therefore, if the chancellor found upon remand that the requirements set forth in section 93-16-3(2)[8] have been met, he must still consider the factors established in Martin to determine “both whether to award grandparent visitation and then, if it is awarded, its extent.” Arrington v. Thrash, 122 So.3d 144, 149 (¶ 19) (Miss.Ct.App.2013). Accordingly, after joinder of, and service of process to, all necessary parties, the chancellor should fully discuss and apply section 93-16-3’s framework and the Martin factors to determine whether grandparent visitation is appropriate in this case.
¶ 41. Because I find the record reflects that not all the necessary parties to this action were served notice and joined, I find the chancellor lacked jurisdiction to award grandparent visitation. I therefore respectfully dissent from the majority’s opinion because I would vacate the chancellor’s judgment and remand this ease to chancery court for further proceedings.
LEE, C.J., FAIR AND JAMES, JJ., JOIN THIS OPINION.

.See also M.R.C.P. 19 (discussing joinder of persons needed for just adjudication); M.R.C.P. 21 (discussing misjoinder and non-joinder of parties).

. Miss.Code Ann. § 93-16-3 (Supp.2012).

. Martin v. Coop, 693 So.2d 912, 916 (Miss.1997).

. See Miss. Code Ann. § 93-17-1 (Rev.2004) (establishing that, upon the petition of any person, the chancery court possesses jurisdiction "to alter the names of such person, to make legitimate any living offspring of the petitioner not born in wedlock, apd to decree said offspring to be an heir of the petitioner”).

. See Miss.Code Ann. § 93-16-3; Miss.Code Ann. § 93-16-5.

. Section 93-16-3(2) provides that a chancellor may award grandparent visitation where the grandparent establishes: (1) a viable relationship with the grandchild; (2) that visitation with the grandchild has been unreasonably denied by the grandchild’s parent; and (3) that visitation is in the grandchild’s best interest.